ELECTRONICALLY
FILED
Jun 03 2022
U.S. DISTRICT COURT
Northern District of WV

## UNITED STATES DISTRICT COURT
## FOR NORTHERN DISTRICT OF WEST VIRGINIA

_____

ALFREDO BELTRAN LEYVA,                                  Civil No. **5:22-CV-142 (Bailey/Mazzone/Blalock)**

         Plaintiff,

    v.                                                          **COMPLAINT AND JURY DEMAND**

Federal Bureau of Prisons ("BOP");
Michael Carvajal, individually and as the Director
 of the BOP:
James Petrucci, individually and as the Mid-Atlantic
 Regional Director of the BOP;
Catricia Howard, individually and as an Assistant Director
 Corrections Program Division of the BOP;
M. Facey, individually and as a Hearing Officer
 of the BOP;
John O'Brien, individually and as the Chief of the
 Designation and Sentence Computation Center
 of the BOP;
Stanley Lovett, Jr., individually and as the Complex
 Warden-Hazelton of the BOP;
Bryan M. Antonelli, individually and as the Warden,
 USP Hazelton of the BOP;
Lieutenant Vincent Cruz, individually and as a member of
 Special Investigative Services at USP Hazelton, BOP; and
John/Jane Doe 1, 2, 3, 4 and 5, employees of the BOP,

         Defendants.

_____

      Plaintiff, Alfredo Beltran Leyva, incarcerated in the United States Penitentiary at Hazleton,

West Virginia,  by and through his counsel, submits this Complaint for violations of his rights under

the First, Fifth and Eight Amendments to the United States Constitution and pursuant to 42 U.S.C.

§1983, does respectfully state and pray:

## STATEMENT OF THE CASE

      1.     Plaintiff is and  has been an inmate at USP Hazelton, West Virginia, under the control

of defendant, Federal Bureau of Prisons ("BOP"), serving a sentence of life imprisonment.  Until

August 26, 2021, he was housed with the general population without actual incident, until he was transferred to the Special Housing Unit. The transfer to SHU was pursuant to an Incident Report ("IR") dated August 26, 2021 (referencing an "incident" that purportedly occurred on February 24, 2021) that alleged his use of a phone in a criminal manner. There was never a hearing with respect to this charge yet plaintiff remained in SHU.

2.    The incident referenced in the IR concerned a correspondence received by plaintiff in August of 2021 from someone he did not know. The correspondence came without a return address, only a phone number. The note said in "code," that the writer wanted to work in narcotics trafficking. Plaintiff had no interest in such matters and disregarded it.

a.    However, plaintiff received a second note. He then sent both notes to his attorney with instructions to report it to the authorities. Plaintiff's counsel did so in a legal call and explained to him that a federal agent was going to look into it. A federal agent did become involved and plaintiff was asked if there was someone outside the prison who could contact the person who wrote the note under the guidance of an agent. In response, the brother of an inmate who had been housed with plaintiff in the past, offered to be the person to work with the agent.

b.    Upon information and belief, the brother and the federal agent were then in contact with the writer of the two notes. Several requests were made of plaintiff to make calls to individuals in Texas and California, during this period in order to confirm what was going on. Plaintiff did not personally know the people he was calling and, as of this date, he still does not know.

c.    It was a call made pursuant to the instruction of law enforcement, as explained above, that was the subject of the allegation that plaintiff had used his phone in an illegal manner.

In fact, plaintiff's only involvement in the phone call and contact with individuals outside the prison was to assist in reporting the crime of trying to contact him and the investigation of that contact which was taking place by DEA.

        d.      Plaintiff's counsel sent documents to the investigative unit of Hazelton related to the above. Upon information and belief, because the documents provided by plaintiff's counsel to Hazelton refuted the charge that plaintiff had used a phone in a criminal manner, it was expunged.

        e.      Nevertheless, plaintiff was committed to SHU on or about August 26, 2021 and, despite the expungement, he has wrongfully remained in SHU.

3.      While in SHU, on or about March 4, 2022, plaintiff received a Notice of a Hearing on Referral for Transfer to ADX Florence, General Population ("NOH"). The NOH referenced, in part, the allegations appearing in the IR pertaining to the use of a phone. This reference, however, stated that the charge upon which the IR was based had been expunged. No other specific reason was provided for the contemplated transfer of plaintiff to ADMAX Florence-GP ("ADX-GP Florence" or "ADX").

4.      On March 9, 2022, a hearing was conducted. Upon information and belief, the exculpatory documents submitted by plaintiff's attorney were never reviewed by the Hearing Officer on March 9, 2022.

5.      Also on March 9, 2022, plaintiff received the Administrator's Report confirming that a decision had been made by BOP to transfer him to the maximum custody facility at ADX-GP. The Findings alleged plaintiff's contact with Mexican Mafia street associates, a reference to a gang known to have ties to prison inmates. Since arriving at Hazelton on May 1, 2017, however, plaintiff has never been associated with any gangs. On the contrary, he has maintained an exemplary record,

that was, due to events entirely outside his control, apparently jeopardized by the two letters he had received.   Accordingly, the Findings upon which the  decision to transfer him to ADX was based relate solely to the Hearing Officer's view of plaintiff's characteristics, status and notoriety, and not upon any conduct that he may have committed.

6.     The decision to continue to hold plaintiff in SHU at UPS Hazelton despite the expungement of the claim upon which his transfer was premised violates plaintiff's rights to due process and has wrongfully subjected him, and continues to wrongfully subject him, without justification, to inhumane conditions adversely affecting his health and well-being.  The decision to transfer plaintiff to ADX-GP Florence for reasons that had nothing to do with his wrongful or unauthorized  conduct or activities, violated plaintiff's rights to due process and was reached in a manner that violated plaintiff's due process rights, and will, if implemented, wrongfully subject him, without justification, to even harsher conditions than he was then experiencing.

## JURISDICTION

7.     Pursuant to 28 U.S.C. §1361 this court has original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff.

8.     This court has jurisdiction pursuant to 28 U.S.C. §1331, 1343 (a), 1346, 2201, 2202 and 5 U.S.C. §702 to grant the declaratory and injunctive relief requested to remedy the violations by defendants of the United States Constitution as well as the Extradition Treaty between the United States and Mexico.

9.     Pursuant to 28 U.S.C. §1331 this court has jurisdiction over causes of action based upon the rights recognized in *Bivens v. Six Unknown Named Agents*, 403 U.S. 388, 91 S.Ct. 1999

-4-

(1971) *et seq*. Jurisdiction over challenges to a prisoner's conditions of confinement may be brought pursuant to this statute subject to exhaustion of administrative remedies.

## VENUE

10.     The cause of action arose in the Northern District of West Virginia and the conduct and omissions upon which Beltran's claims are based have occurred and continue to occur in this judicial district.   Thus, venue in this court is proper pursuant to 28 U.S.C. §1391(b).

11.     This court possesses personal jurisdiction over each of the parties sued in their individual capacities pursuant to the factual circumstances set forth in this Complaint.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

12.     Plaintiff authorized his attorney to submit all papers concerning this matter and other matters for which his attorney is assisting him to the SIS office.   Counsel has done so and received confirmation that plaintiff's administrative appeals have been received.  Accordingly, as will be more fully delineated below, plaintiff has exhausted his administrative remedies.

## PARTIES

13.     Plaintiff, Alfredo Beltran Leyva, is an inmate at United States Penitentiary Hazelton located in Hazelton, West Virgina, serving a life sentence within the jurisdiction of this court.

14.     Defendant, BOP, is the federal agency into whose custody plaintiff has been committed during the incarceration portion of his current federal criminal sentence.  Defendant BOP is sued in its official capacity.

15.     Michael Carvajal is, and at all relevant times was, the Director of the BOP. Defendant Carvajal is sued in his official and individual capacities.

16.     James Petrucci is, and at all relevant times was,  the Mid-Atlantic Regional Director

of the BOP.   Defendant Petrucci has decision making authority regarding transfer and placement of prisoners in prisons operated by BOP, including USP Hazelton, as well as the nature of a prisoner's confinement.   Defendant Petrucci has had direct involvement in denying plaintiff's requests to reconsider the decision to transfer him to ADX Florence.  Petrucci is sued in his official and individual capacities.

17.    M. Facey, (upon information and belief, Michael Facey) is, and at all relevant times was, a Hearing Officer with the BOP.  Defendant Facey is sued in his official and individual capacities.

18.    John O'Brien is, and at all relevant times was, Chief of the Designation and Sentence Computation Center of the Federal BOP, and as such has decision making authority regarding transfer and placement of prisoners in prisons operated by BOP, including USP Hazelton, ADMAX, Florence as well as the nature of a prisoner's confinement.  Defendant O'Brien is sued in his official and individual capacities.

19.    Stanley Lovett, Jr. is, and at all relevant times, was, Complex Warden-Hazelton, Federal BOP.  Defendant Lovett is responsible for the administration, operation, maintenance, policies, procedures and functions of the Hazelton BOP Prison Complex, including an inmate's continued placement at USP Hazleton and the nature of that confinement. Lovett is sued in his official and individual capacities.

20.    Bryan M. Antonelli is, and at all relevant times, was, Warden, USP Hazelton, Federal BOP.  Defendant Antonelli  is responsible for the administration, operation, maintenance, policies, procedures and functions at the Hazelton BOP Prison Complex, including an inmate's continued placement at USP Hazelton and the nature of that confinement.  Defendant Antonelli is sued in his

official and individual capacities.

21.     Lieutenant Vincent Cruz, at all relevant times until in or about February 2022, was a member of the Special Investigative Services at USP Hazelton, Federal BOP and was responsible for internal investigations of illegal activities at USP Hazleton and investigations pertaining to individuals believed to be involved in such illegal activities.  Defendant Cruz is sued in his official and individual capacities.

22.     Defendant John Doe 4 is, and at all relevant times, was, a member of the Special Investigative Services at USP Hazelton, Federal BOP, and was and is responsible for internal investigations of illegal activities at USP Hazleton and investigations pertaining to individuals believed to be involved in such illegal activities.  Defendant John Doe 4 is sued in his official and individual capacities.

23.     Defendant John Doe 5 is, and at all relevant times since in or about February 2022, was, the successor to defendant, Cruz, and as such is a member of the Special Investigative Services at USP Hazelton, Federal BOP,  responsible for internal investigations of illegal activities at USP Hazleton and investigations pertaining to individuals believed to be involved in such illegal activities.  Defendant John Doe 5 is sued in his official and individual capacities.

24.     Catricia Howard is, and at all relevant times, was, an Assistant Director of the Corrections Program Division, Federal BOP and as such is responsible for designations, sentence computation, witness security and victim witness programs, security and emergency planning, inmate tranportation, and unit and case management operations.  She also directs the BOP's intelligence efforts through coordination with law enforcement agencies.  Defendant Howard is sued in her official and individual capacities.

25.     John/Jane Doe (1-3) are, and at all relevant times, were, employees of defendant, Federal BOP involved in the actions that are the subject of this Complaint.

26.     Defendants  Carvajal, Petrucci, Howard, Facey, O'Brien,  Lovett, Antonelli, Cruz, John Doe 5 and John Doe 4 were acting under color of federal law as to the claims raised in this Complaint.

## FACTUAL BACKGROUND

### Plaintiff's Conviction and Confinement

27.     Plaintiff was arrested in Mexico, by Mexican authorities on January 21, 2008.   On August 24, 2012, plaintiff was a defendant in an Indictment filed in the United States District Court, District of Columbia, Docket 12-184 (RJL).  The Indictment charged plaintiff with participation in a conspiracy to import and distribute narcotics between January 2000 and August 2012.   On November 27, 2013, Mexico granted his extradition to the United States.

28.     Plaintiff remained in custody in Mexico until his extradition to the United States on November 19, 2014.

29.     Article 17 of the extradition treaty between the United States and Mexico contains the following Rule of Specialty:

> 1.     A person extradited under the present Treaty shall not be detained, tried or punished in the territory of the requesting Party for an offense other than that for which extradition has been granted, nor extradited by the Party to a third Statte unless:
>
> a.     He has left he territory of the requesting Party after his extradition and has voluntarily returned to it:
>
> b.     He has not left the territory of the requesting Party within 60 days after being free to do so; or

c.    The requested Party has given its consent to his detention trial, punishment or extradition to a third State for an offense other than that for which the extradition was granted.

These stipulations shall not apply to offenses committed after the extradition.

30.    Upon plaintiff's arrival in the United States, he was housed in the District of Columbia at low-security state and local institutions, in which he remained without incident until his transfer in or about April 2017.

31.    On April 13, 2017 plaintiff was sentenced to life imprisonment and was thereafter designated to USP Hazelton.  He was transferred to Hazelton on May 1, 2017.  He served his time in general population at Hazelton without, to his knowledge, any incident.  Nevertheless, in or about August 26, 2021, he was transferred to the Special Housing Unit at Hazelton, pursuant to an Incident Report dated August 26, 2021.

### Plaintiff's Confinement in SHU

32.    The Incident Report claimed that an incident had taken place on February 24, 2021 whereby plaintiff had used a phone in a criminal manner.  The IR, however, indicated that the report of this "incident," which plaintiff denies, was expunged on a date unknown. Yet, despite the expungement and no other apparent ground for his removal from the general population at Hazelton, he has remained in SHU and continues to be in SHU as of the date of this pleading.

33.    Prior to this confinement in SHU, and since his arrival in 2014 into the United States, plaintiff  was uneventfully confined in low security institutions until his transfer to Hazelton. At Hazelton, he successfully remained in the general population for four years without the constraints of SHU.

## Plaintiff's So-Called Hearing and Report

34.    On March 4, 2022, plaintiff was served with a written notice signed by defendant, Michael Facey, a Discipline Hearing Administrator with the Mid-Atlantic Regional Office of the BOP ("Hearing Notice" or "Notice").  The Hearing Notice was written in English, a language that plaintiff does not understand.  The Hearing Notice purported to inform plaintiff that in 4 days he would have a hearing before a BOP Hearing Administrator who would determine whether or not he was to be transferred to ADX Florence General Population.

35.    The Notice stated that plaintiff was to be  referred for placement in ADX because:

> Your placement in other correctional facilities creates a risk to institution security and good order, poses a risk to the safety of staff, inmates or others, or to public safety; and/or
>
> As a result of your notoriety to the extent that your well-being would be jeopardized in a less secure setting.

36.    The Notice also made the following allegations of fact:

> Prior to incarceration, inmate Leyva was considered one of the leaders of the Beltran-Leyva Mexican Drug Cartel.  He ran the cartel along with his brothers all of whom were later killed or imprisoned in Mexico. In December 2020, the National Gang Unit began an investigation in Beltran-Leyva, focusing on activities at USP Hazelton. During monitoring of a Mexican Mafia case, it was revealed that Beltran-Leyva was in contact with Mexican Mafia street associates. The communication appeared coded and likely drug related. During the investigation of Beltran-Leyva, it is discovered he was utilizing the phone in a criminal manner. An incident report of a Code 197, Use of the Telephone for Illegal Purposes, which was expunged by the Discipline Hearing Officer (OHO) *[sic]*, due to the OHO not supporting the charge.  It is determined the inmate would be unable to to function in a less restrictive correctional environment without being a threat to others or to the secure and orderly operation of a less secure correctional facility. Inmate Leyva's conduct creates a risk to institutional security, poses a risk to the safety of staff , other inmates and the public. As a result, he may not be safely housed in

the general population of a regular correctional facility. It is recommended Leyva be transferred to the ADX where his activities may be more closely monitored.

37.    On December 7, 2021, prior to receipt of the Hearing Notice, but after receipt of the IR, plaintiff's counsel, Linda George, provided information in mitigation of the accusation set forth in the IR to the Office of Special Investigation Services specifically to the attention of defendant Cruz. The receipt of the information was acknowledged. Other than an acknowledgment of service, no inquiries, follow-ups, requests for additional information or clarification were received by plaintiff or his counsel from any of the defendants as a result of the information provided.

38.    Although the Hearing Notice provided that a hearing would be held on March 8, 2022, it did not occur on that day. Instead, the hearing concerning the transfer to ADX Florence was held on March 9, 2022 by telephone with a Spanish interpreter.

39.    Prior to the hearing, because he believed it to be a disciplinary hearing, plaintiff asked that a staff member, his counselor, represent him. He was not, however, represented by that counselor at the hearing nor was he represented by legal counsel.

40.    At the hearing, the BOP, through Facey, did not present any evidence concerning contacts or communications with anyone associated with the Mexican Mafia. Nor was evidence provided to support the conclusion that plaintiff's continued presence in Hazelton created a risk to institution security and good order, posed a risk to the safety to staff, inmates or others, or to public safety; and/or as a result of his notoriety, his well-being would be jeopardized in a less secure setting. In fact, plaintiff was not confronted with any evidence at all at the hearing, notwithstanding the fact that the BOP, through Cruz, was in possession of the exculpatory evidence submitted on plaintiff's behalf by his counsel.

-11-

41.    Plaintiff did not make a statement at the hearing except to deny allegations of improper conduct and to advise that his counsel had submitted relevant documents on his behalf to Cruz.

42.    A FOIA request for an expedited response has been filed on plaintiff's behalf for the record/recording of the March 9, 2022 hearing. As of the date of this pleading, despite the expedited request no response has been received.

43.    On March 9, 2022, the same day as the hearing, the BOP's Hearing Administrator submitted a report of the hearing in which Facey found that plaintiff met the following criteria for placement in ADX Florence: "Your placement in other correctional facilities creates a risk to institution security and good order, poses a risk to the safety to staff, inmates or others, or to public safety; and/or as a result of your notoriety, to the extent that your well-being would be jeopardized in a less secure setting."

44.    Facey, without evidence, issued the following findings of fact which are identical to the allegations of fact set forth in the Hearing Notice:

> Prior to incarceration, inmate Leyva was considered one of the leaders of the Beltran-Leyva Mexican Drug Cartel. He ran the cartel along with his brothers all of whom were later killed or imprisoned in Mexico. In December 2020, the National Gang Unit began an investigation in Beltran-Leyva, focusing on activities at USP Hazelton. During monitoring of a Mexican Mafia case, it was revealed that Beltran-Leyva was in contact with Mexican Mafia street associates. The communication appeared coded and likely drug related. During the investigation of Beltran-Leyva, it is discovered he was utilizing the phone in a criminal manner. An incident report of a Code 197, Use of the Telephone for Illegal Purposes, which was expunged by the Discipline Hearing Officer (OHO) *[sic]*, due to the OHO not supporting the charge. It is determined the inmate would be unable to to function in a less restrictive correctional environment without being a threat to others or to the secure and orderly operation

of a less secure correctional facility. Inmate Leyva's conduct creates a risk to institutional security, poses a risk to the safety of staff, other inmates and the public. As a result, he may not be safely housed in the general population of a regular correctional facility. It is recommended Leyva be transferred to the ADX where his activities may be more closely monitored.

45.     The Report of the Hearing Administrator was provided with a translation to plaintiff, which included the proviso that plaintiff had 30 days to appeal the decision through the Administrative Remedy Program.  Plaintiff submitted his appeal through the Administrative Remedy Program by way of internal mail.

46.     Additionally, plaintiff's counsel directed a request to review the decision to defendant, Mid-Atlantic Regional Director of the BOP, James Petrucci.  On March 31, 2022, Petrucci responded that the decision stands.

47.     Defendants have failed to reveal the evidence upon which they relied to support the decision to transfer plaintiff to ADX Florence and to reject plaintiff's appeal of that decision.

48.     Defendants have failed to disclose the source or origin of any allegations material to the decision to transfer plaintiff to ADX Florence and the rejection of plaintiff's appeal of that decision.

49.     The March 9, 2022 Report of the decision to transfer plaintiff is *prima facie* defective as it fails to articulate a legitimate basis for the decision to transfer plaintiff and is internally contradictory as it appears to rely upon an incident that it also reports was expunged.

50.     Because of its infirmities, a FOIA request was filed to obtain information on an expedited basis concerning the rationale for the decision to transfer plaintiff but no response has been received.

51.    On August 25, 2021, plaintiff, through his attorney, advised defendants, by way of the Legal Department, A. Mainen, of several medical conditions and concerns in connection with his treatment by the BOP, including, but not limited to, epileptic fits and panic attacks.  Nevertheless, as of the date of this pleading, plaintiff continues to remain subject to the harsh conditions of the SHU, despite his outstanding medical issues.  As a result, he has lost a significant amount of weight and become mentally and physically debilitated.

**Plaintiff's Conditions of Confinement in the SHU at USP Hazelton**

52.    Plaintiff's transfer to SHU constituted punishment to plaintiff that was in addition to his punishment for the crime of conspiracy to import cocaine for which he received a life sentence of imprisonment.

53.    Confinement in SHU is a significantly harsher punishment than continued imprisonment in the general population at USP Hazelton, where plaintiff was successfully housed for years, or other similar institutions operated by the BOP including institutions rated as High Security.

54.    Defendants deprived plaintiff of basic human needs, including social contact, communications with others, meaningful physical exercise and environmental and sensory stimulation.  Plaintiff's placement in indefinite solitary confinement, has had a substantial negative impact on plaintiff's physical and mental health causing him to suffer mental and emotional harm. In SHU, plaintiff has been locked down in solitary confinement for 23 hours per day. He has been forced to eat meals of minimal calories, alone with his food served through a slot in the cell.   The cell is bare, other than a concrete or metal stool and a bench attached to the wall.  It is cold in the winter, hot in the summer.  Lighting is unpredictable and not subject to inmate control, contributing

to disorientation.   No phone calls are permitted, and other than legal calls, one call a month is permitted for which the inmate must pay.  His ability to bathe and shave are limited.  Medicine is provided irregularly.

55.     Since his confinement in BOP, plaintiff has demonstrated the ability to function in a less restrictive environment without being a threat to others or a threat to the secure and orderly operation of any BOP institution.  He has never had a prior major infraction during his time in prison.  Despite this record, plaintiff has not been notified of or received a meaningful review of his continued placement in solitary confinement by defendants who have only provided pro forma responses to his administrative complaints.

56.     Defendants have placed and maintained plaintiff since August 2021 in extreme and indefinite solitary confinement with the knowledge that solitary confinement is disproportionate punishment for plaintiff's actions (particular given the fact that plaintiff committed no such acts) and such confinement serves no legitimate penological justification and plaintiff's needs may be managed in a general population.   Consequently, the conditions of plaintiff's incarceration are violative of the terms of his extradition.

57.     Upon information and belief, plaintiff never underwent a psychological evaluation nor a risk assessment.

58.     By virtue of their positions, defendants are aware that plaintiff's conditions of confinement have exacted a serious physical and psychological toll on plaintiff, yet at all times, these individuals have failed to undertake any meaningful review of plaintiff's requests for release from SHU and denial of a transfer to ADX.  Thus, these defendants have exhibited deliberate indifference toward and conscious disregard for plaintiff's constitutional rights.

-15-

### The Anticipated Conditions of Confinement at the ADX

59.     Plaintiff's transfer to, and confinement in, ADX-GP Florence  will constitute a significantly harsher punishment  than continued imprisonment in USP Hazelton, where plaintiff was successfully housed for years, or other similar institutions operated by the BOP including institutions rated as High Security.   The ADX is the most restrictive institution in the BOP system and has been often referred to as the "Alcatraz of the Rockies."   Each cell at ADX is only 87 square feet and is separated from the hallway by a solid steel door and an inner grill.   The cells in the ADX are configured in such a way as to limit access to natural light as well as to minimize contact between inmates and prison staff.   All inmates in the ADX take meals alone in their cells and shower in their cells.   They do not have a meaningful opportunity to work.   In the past, and prior to COVID, inmates were allotted no more than five hours per week for exercise out of their cells in separate, single-occupancy exercise areas.   These exercise areas consist of deep concrete pits that prohibit inmates from seeing any of the surrounding terrain and are so small that one can only walk approximately ten steps in any direction.   Also, prior to COVID, inmates in the ADX may receive only two 15 minute social telephone calls per month and five social visits per month. Social visits in the ADX are non-contact only and inmates are strip-searched after every visit.   Since the onset of COVID, even the already constricted availability of exercise, telephone calls and social visits have become more controlled and stringent.

60.     Upon information and belief, there is no difference in the living conditions between inmates housed in the different areas of the ADX, notwithstanding the different housing units such as the General Population Unit, the Special Housing Unit and the Control Unit.   Conditions like those at the ADX have been equated with torture by some courts.

## FIRST CAUSE OF ACTION

*(Fifth Amendment-Due Process: Deprivation of Plaintiff's
Liberty Interest Without Due Process of Law
Confinement in SHU, Violation of 42 U.S.C. §1983)*

61.     Plaintiff repeats all prior allegations.

62.     Defendants, BOP, Lovett, Antonelli, Cruz, John Doe 5, John Doe 4 and John Doe 1, had and continue to have a duty not to violate plaintiff's procedural and substantive due process rights.  Defendants' increase in the severity of plaintiff's punishment pursuant to his confinement in SHU violated and continues to violate his 5th Amendment rights, in that not only do those conditions pose atypical and significant hardship upon him in relation to the ordinary incidence of prison life causing him to suffer damages to his health and well-being, but defendants have subjected, and will continue to subject, plaintiff to those conditions without affording to him the procedural and substantive due process considerations required by the 5th Amendment:

a.     The record of the  incident which apparently served as the factual basis for plaintiff's confinement in SHU   was expunged. Plaintiff's counsel sent documents to the investigative unit of Hazelton related the charge and the charge was  expunged.  Consequently, no credible factual basis has been presented as a rationale for continuing to hold defendant in SHU. Thus, defendants have deprived plaintiff of his right to procedural due process because his confinement in SHU has been continued without notice to plaintiff of the factual basis upon which defendants have relied.  Plaintiff's continuing detention in SHU, despite expungement of the charge which caused him to be placed in SHU, have caused him to suffer undue distress and concern.

b.     Defendants, BOP, Lovett, Antonelli, Cruz, John Doe 5, John Doe 4 and John Doe 1,  deprived plaintiff of his right to procedural due process because his confinement in SHU and

his continued incarceration in SHU was implemented and continued without engaging in a reasoned examination of the underlying factual basis.  This included any investigation concerning or arising out of the exculpatory information provided by plaintiff's counsel.

          c.     Defendants, BOP, Lovett, Antonelli, Cruz, John Doe 5, John Doe 4 and John Doe 1,  deprived plaintiff of his right to procedural due process because no hearing has been conducted with regard to the decision to move plaintiff to SHU and to continue to hold him in SHU.

          d.     Defendants, BOP, Lovett, Antonelli, Cruz, John Doe 5, John Doe 4 and John Doe 1,  deprived plaintiff of his right to procedural due process because confinement in SHU was implemented and his presence in SHU continued without providing plaintiff with a fair opportunity to rebut the alleged factual bases for these actions.

          e.     Defendants, BOP, Lovett, Antonelli, Cruz, John Doe 5, John Doe 4 and John Doe 1,  deprived plaintiff of his right to procedural and substantive due process because his move to SHU was implemented and his presence in SHU continued absent reliable evidence and were, therefore, arbitrary, capricious, unfair, unreasonable and/or unjust.

63.    The continuation by defendants, BOP, Lovett, Antonelli, Cruz, John Doe 5, John Doe 4 and John Doe 1,  of plaintiff's solitary confinement was done and continues to be carried out in an arbitrary and capricious manner, without legitimate penological justification and without adequate review or meaningful examination and/or notice of same to plaintiff.

64.    The conduct by defendants, BOP, Lovett, Antonelli, Cruz, John Doe 5, John Doe 4 and John Doe 1, set forth in the First Cause of Action, under color of law. caused plaintiff to be subjected to the deprivation of rights, privileges and immunities secured by the Constitution and laws, to plaintiff's injury for which redress is due and owing pursuant to 42 U.S.C. §1983.

## SECOND CAUSE OF ACTION

*(Fifth Amendment-Due Process: Deprivation of Plaintiff's*
*Liberty Interest Without Due Process of Law*
*Approval of Transfer to ADX-GP, Violation of 42 U.S.C. §1983)*

65.     Plaintiff repeats all prior allegations.

66.     The decision of defendants,  BOP, Carjaval, Petrucci, Howard, Facey, O'Brien, Lovett, Antonelli, Cruz, John Doe 5, John Doe 4, John Doe 2  to transfer plaintiff to ADX-GP Florence after years of uneventful service of his time in the Hazelton general population, will impose upon him an atypical and significant hardship in relation to the ordinary incidence of prison life, without affording to him the procedural and substantive due process considerations required by the 5th Amendment:

a.     Defendants BOP, Carjaval, Petrucci, Howard, Facey, O'Brien, Lovett, Antonelli, Cruz, John Doe 5, John Doe 4, John Doe 2, deprived plaintiff of his right to procedural due process because the decision to transfer him to ADX-GP was reached without engaging in a reasoned examination of the underlying factual basis. Since the record of the  incident which apparently served as the factual basis for plaintiff's transfer to SHU was expunged there is no credible allegation of conduct committed by plaintiff that justifies a transfer.  In fact, any purported justification is belied by the inculpatory information served upon defendants.

b.     Defendants BOP, Carjaval, Petrucci, Howard, Facey, O'Brien, Lovett, Antonelli, Cruz, John Doe 5, John Doe 4, John Doe 2, deprived plaintiff of his right to procedural due process because the decision to transfer him to ADX was reached without affording to plaintiff the opportunity to have the assistance of counsel and/or to rebut the alleged factual bases for this decision.

c.      Defendants BOP, Carjaval, Petrucci, Howard, Facey, O'Brien, Lovett, Antonelli, Cruz, John Doe 5, John Doe 4, John Doe 2, deprived plaintiff of his right to procedural due process because the decision to transfer him to ADX was reached absent reliable evidence and was, therefore, arbitrary, capricious, unfair, unreasonable and/or unjust.

d.      The decision to transfer plaintiff to ADX-GP Florence is in contravention of BOP Program Statement  PS 5100.07, which states, in relevant part that:

> (1) ADX Florence.  ADX Florence general population units are used for those inmates who have demonstrated an inability to function in a less restrictive environment without being a threat to others or to the secure and orderly operation of the institution.
>
> *   *   *
>
> (3) Referral Procedures and Criteria.  Prior to referring an inmate to USP Marion or ADX Florence, redesignation to another high security institution should be considered first. If transfer to another institution is not appropriate, Wardens shall refer the proposed USP Marion or ADX Florence case to their respective Regional Director.  If the Regional Director concurs, he or she shall forward the recommendation to the North Central Regional Director.
>
> Assignment to USP Marion or ADX Florence will ordinarily be made without regard for such factors as release destination and program needs, such as education and vocational training.  Prior to transfer to USP Marion or ADX Florence, staff at the sending institution shall ensure that the inmate is assigned Maximum custody. While in transit to USP Marion or ADX Florence, inmates will be housed and provided visiting, correspondence, and telephone privileges as if confined at USP Marion or ADX Florence.

67.      The decision of defendants BOP, Carjaval, Petrucci, Howard, Facey, O'Brien, Lovett, Antonelli, Cruz, John Doe 5, John Doe 4, John Doe 2  to transfer plaintiff to ADX was reached in an arbitrary and capricious manner, and is without legitimate penological justification and without adequate review or meaningful examination and/or notice of same to plaintiff.

-20-

68.     The conduct by defendants, BOP, Carjaval, Petrucci, Howard, Facey, O'Brien, Lovett, Antonelli, Cruz,John Doe 5, John Doe 4, John Doe 2, set forth in the Second Cause of Action, under color of law. caused plaintiff to be subjected to the deprivation of rights, privileges and immunities secured by the Constitution and laws, to plaintiff's injury for which redress is due and owing pursuant to 42 U.S.C. §1983.

### THIRD CAUSE OF ACTION

*(Violation of Plaintiff's Right To Be Free*
*of Cruel and Unusual Punishment*
*Placement in SHU, Violation of 42 U.S.C. §1983)*

69.     Plaintiff repeats prior allegations.

70.     The 8th Amendment to the Constitution of the United States forbids the infliction of cruel and unusual punishment.

71.     The totality of the conditions imposed by defendants BOP, Carjaval, Petrucci, Howard, Facey, O'Brien, Lovett, Antonelli, Cruz, John Doe 5, John Doe 4, John Does 1-3  upon plaintiff have deprived and continue to deprive him of social contact and environmental and sensory stimulation constituting cruel and unusual punishment.  Defendants  have been deliberately indifferent to the serious medical needs of plaintiff where they have maintained him in SHU without medical attention by practitioners who speak Spanish, or in the presence of Spanish language interpreters. The totality of the conditions of plaintiff's confinement which are grossly disproportionate to the severity of the offense he has allegedly committed–which was expunged because the evidence did not warrant its imposition–constitute cruel and unusual punishment.  The plaintiff's extreme solitary confinement has had a substantial negative impact on his physical and mental health.  This negative impact has manifested itself at various times throughout the

confinement by panic attacks which should have received medical attention.  These conditions were maintained knowing they were without legitimate penological justification.  The acts described thus constituted and continue to constitute punishment in violation of the 8th Amendment.

72.     The conduct by defendants, BOP, Carjaval, Petrucci, Howard, Facey, O'Brien, Lovett, Antonelli, Cruz, John Doe 5, John Doe 4, John Does 1-3, set forth in the Third Cause of Action, under color of law. caused plaintiff to be subjected to the deprivation of rights, privileges and immunities secured by the Constitution and laws, to plaintiff's injury for which redress is due and owing pursuant to 42 U.S.C. §1983.

### FOURTH CAUSE OF ACTION

*(Violation of Plaintiff's Right To Be Free of*
*Cruel and Unusual Punishment*
*Decision to Transfer to ADX, Violation of 42 U.S.C. §1983)*

73.     Plaintiff repeats prior allegations.

74.     Should plaintiff be transferred, the harsh conditions at ADX will exacerbate the threats and damages to plaintiff's physical and mental health.

75.     The decision by defendants  BOP, Carjaval, Petrucci, Howard, Facey, O'Brien, Lovett, Antonelli, Cruz, John Doe 5, John Doe 4, John Does 1-3 to transfer plaintiff to ADX will expose him to unnecessary and wanton infliction of pain, constituting cruel and unusual punishment. Such a circumstance, and the conditions that will be imposed thereby, will be grossly disproportionate to the severity of the offense which he allegedly committed but was expunged, thereby constituting cruel and unusual punishment.

76.     The conduct by defendants, BOP, Carjaval, Petrucci, Howard, Facey, O'Brien, Lovett, Antonelli, Cruz, John Doe 5, John Doe 4, John Does 1-3, set forth in the Fourth Cause of Action,

under color of law. caused plaintiff to be subjected to the deprivation of rights, privileges and immunities secured by the Constitution and laws, to plaintiff's injury for which redress is due and owing pursuant to 42 U.S.C. §1983.

## FIFTH CAUSE OF ACTION

(*Violation of the Rule of Specialty and*)
(*Diplomatic Note*)

77.    Plaintiff repeats prior allegations.

78.    Confinement in SHU by defendants BOP, Lovett, Antonelli, Cruz, John Doe 5 and John Doe 1, and the pending transfer to ADX by defendants  BOP, Carjaval, Petrucci, Howard, Facey, O'Brien, Lovett, Antonelli, Cruz, John Doe 5, John Doe 4, John Does 1-3 have subjected and will continue to subject plaintiff to atypical and unconstitutional restraints based upon a finding by defendants that plaintiff is responsible for circumstances and/or conduct other than those for which he was extradited to the United States.

79.    The move to SHU and the pending transfer to ADX constitute additional punishment in violation of the Rule of Specialty, Article 17 of the Extradition Treaty of the United States and Mexico.

80.    Plaintiff relied upon the conditions set forth in the diplomatic note concerning his extradition.  His continued detention in SHU and pending transfer to ADX are violative of defendant's conditions of extradition to the United States as expressed in the diplomatic note.

## SIXTH CAUSE OF ACTION

(*Writ of Mandamus*)

81.    Plaintiff repeats all prior allegations.

82.     Plaintiff is entitled to the issuance of a writ of mandamus directing defendants, BOP, Carjaval, Petrucci, Howard, Facey, O'Brien, Lovett, Antonelli, Cruz, John Doe 5, John Doe 4, John Does 1-3 jointly and severally, to take  him out of SHU and return him to the Hazelton General Population.

## SEVENTH CAUSE OF ACTION

### *(Injunction)*

83.     Plaintiff repeats all prior allegations.

84.     Plaintiff is entitled to the issuance of an order enjoining defendants, BOP,  Carjaval, Petrucci, Howard, Facey, O'Brien, Lovett, Antonelli, Cruz, John Doe 5, John Doe 4, John Does 1-3 from transferring him to ADX-GP Florence.

## REQUESTS FOR RELIEF

Plaintiff, Alfredo Beltran-Leyva, does hereby respectfully request entry of an Order and Judgment as follows:

A.     Finding that plaintiff was denied due process with respect to the decision to transfer him to SHU at USP Hazelton;

B.     Finding that plaintiff was, and continues to be, denied due process with respect to his continued presence in SHU;

C.     Directing that plaintiff be immediately removed from SHU and returned to the general population at USP Hazelton;

D.     Finding that plaintiff was denied due process with respect to the decision to transfer him to ADX-GP Florence;

E.      Restraining defendants from transferring plaintiff out of USP Hazelton or a prison facility of equal security level;

F.      Enjoining defendants from transferring plaintiff to ADX-GP;

G.      Finding that plaintiff has been and continues to be wrongfully deprived by defendants of his right to be free from cruel and unusual punishment in violation and contravention of the Eighth Amendment to the United States Constitution;

H.      Directing defendants to provide to plaintiff psychological and medical treatment reasonably sufficient to treat plaintiff for his medical and psychological deficits including those caused by his prolonged (and wrongful) solitary imprisonment in SHU;

I.      Awarding to plaintiff nominal, compensatory and/or punitive damages in amounts to be determined by the trier of fact;

J.      Awarding to plaintiff counsel fees and costs; and

K.       For such further relief as the court may deem appropriate.


## REQUEST FOR TEMPORARY RESTRAINING ORDER

Plaintiff's continued presence in SHU is causing ongoing physical and mental harm and the anticipated transfer to ADX will result in irreparable physical and mental harm such that temporary relief during the pendency of this matter is necessary to protect and preserve his health and well being.  Accordingly, this court is requested to enter a Temporary Restraining Order:

A.      Directing that no transfer of plaintiff to ADX may occur until such time as the issues raised in this Complaint are finally adjudicated or upon further order of the court;

B.      Directing defendants to continue to hold plaintiff at UPS Hazelton or a facility of

similar security level until further order of the court; and

    C.     Directing defendants to remove plaintiff from SHU during the pendency of this matter

and provide to him necessary medical and psychological treatment.

DATED:  June 3, 2022             /S/ Linda George
                                 LINDA GEORGE
                                 Attorney at Law
                                 On behalf of Plaintiff, Alfredo Beltran-Leyva
                                 PRO HAC VICE

                                 *Natalie Sal*
                                 Natalie J. Sal, Esq. (WVSP #6603)
                                 Sal Sellaro Culpepper Legal Group
                                 11 Commerce Drive, Suite 103
                                 Westover, WV 26501
                                 Ph: 304-599-5291
                                 Fax: 304-599-5294
                                 Local Counsel

## JURY DEMAND

    Plaintiff hereby requests a trial by jury as to such issues that may be so triable.

DATED: June 3, 2022             /S/ Linda George
                                 LINDA GEORGE
                                 Attorney at Law
                                 On behalf of Plaintiff, Alfredo Beltran-Leyva
                                 PRO HAC VICE

                                 *Natalie Sal*
                                 Natalie J. Sal, Esq. (WVSP #6603) Sal
                                 Sellaro Culpepper Legal Group 11
                                 Commerce Drive, Suite 103 Westover,
                                 WV 26501
                                 Ph: 304-599-5291
                                 Fax: 304-599-5294
                                 Local Counsel

**VERIFICATION**

Pursuant to 28 U.S.C. §1746 and 2242, Linda George declares under penalty of perjury, as a person acting on plaintiff's behalf, to wit, plaintiff's retained attorney, that all of the factual averments of this Complaint are true, either based on Linda George's personal knowledge or upon her personal examination of the pertinent files and records, and other reasonable investigation, as witnessed by her signature below.

DATED:  June 3, 2022

/S/ Linda George
LINDA GEORGE
Attorney at Law
On behalf of Plaintiff, Alfredo Beltran-Leyva
PRO HAC VICE

Natalie J. Sal, Esq. (WVSP #6603)
Sal Sellaro Culpepper Legal Group
11 Commerce Drive, Suite 103
Westover, WV 26501
Ph: 304-599-5291
Fax: 304-599-5294
Local Counsel